Filed 12/6/19; Modified and Certified for Pub. 1/2/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HALYARD HEALTH, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> KIMBERLY-CLARK CORP., <br><br> Defendant and Respondent. | B294567 <br><br> (Los Angeles County Super. Ct. No. BC659662) |

APPEAL from an order of the Superior Court of Los Angeles County, Ann I. Jones, Judge. Affirmed.

Munger, Tolles & Olson, George M. Garvey, Mark R. Yohalem, Jordan D. Segall, and Lauren C. Barnett, for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Julian W. Poon, Theane Evangelis, and William F. Cole, for Defendant and Respondent.

1

When Delaware corporation Kimberly-Clark (Kimberly-Clark) spun off its healthcare division to create a new Delaware company, Halyard Health (Halyard), the two companies agreed Halyard would indemnify Kimberly-Clark for any liability resulting from many litigation matters. Among the matters was a recently filed class action in the Central District of California concerning surgical gowns sold by Kimberly-Clark. Punitive damages were ultimately awarded against Kimberly-Clark in that class action, and Halyard later filed suit in Los Angeles Superior Court seeking a declaratory judgment that it (Halyard) did not have to provide indemnity for the punitive damages award. The merits of whether indemnity is required is not the question before us. Instead, we consider a logically prior question, namely, whether the indemnification dispute is sufficiently related to California for courts of this state to exercise personal jurisdiction over Kimberly-Clark.

## I. BACKGROUND

### A. *Halyard and Kimberly-Clark's Dueling Complaints for Declaratory Relief*

Kimberly-Clark is a Delaware corporation with its principal place of business in Texas. Approximately 350 of its 42,000 employees work in California, and approximately six percent of its global net sales in 2017 were in California. Its consumer brands include Kleenex, Scott, and Huggies diapers. Until October 2014, Kimberly-Clark also had a healthcare division that produced, among other things, surgical gowns.

In October 2014, Kimberly-Clark's healthcare division was spun off into Halyard, "a newly created, standalone, publicly

traded entity."[1]  Halyard is a Delaware corporation with its principal place of business in Georgia.  The terms of the spinoff transaction were memorialized in a "Distribution Agreement" negotiated and executed in Texas.  The Distribution Agreement contains a Delaware choice of law provision and further provides that both parties agreed to submit to the non-exclusive jurisdiction of state and federal courts in Delaware.

The Distribution Agreement requires Halyard to indemnify Kimberly-Clark for specified liabilities related to its former healthcare division.  Section 6.11(a) of the Distribution Agreement provides, with certain exceptions we need not describe, that "[Halyard] shall assume and pay all Liabilities that may result from the Assumed Actions and all fees and costs relating to the defense of the Assumed Actions."  An accompanying schedule of "Assumed Actions" lists 27 litigation matters, including a complaint filed by Dr. Hrayr Hrayr Shahinian against Kimberly-Clark in the Central District of California two days before Halyard and Kimberly-Clark executed the Distribution Agreement.[2]

---

[1]  Halyard later changed its name to Avanos Medical, Inc. Following the parties' practice, we continue to refer to the company as Halyard.

[2]  The list of assumed actions is not exhaustive.  The Distribution Agreement defines "'assumed actions'" to mean "those cases, claims and investigations, whether arising before or after [midnight on the distribution date] (in which any Kimberly-Clark Party or any Affiliate of a Kimberly-Clark Party, other than Halyard and its Subsidiaries, is a defendant or the party against whom the claim or investigation is directed), primarily related to the Halyard Business, *including those* listed on Schedule 6.11(a) as 'assumed actions,' but expressly excluding

Dr. Shahinian's class action complaint asserted claims against Kimberly-Clark for fraudulent concealment, fraud, negligent misrepresentation, unfair business practices (Bus. & Prof. Code, § 17200), and false advertising (Bus. & Prof. Code, § 17500) based on the company's misrepresentations regarding the protection afforded by its MicroCool Breathable High Performance Surgical Gowns.  Halyard was subsequently added as a defendant based on its continued marketing of MicroCool gowns.  The parties refer to this case as *Bahamas* after Bahamas Surgery Center, LLC, which ultimately took over as lead plaintiff.[3]

The *Bahamas* court certified damages/restitution and injunctive relief classes of "entities and natural persons in California who purchased the MicroCool Gowns from February 12, 2012 up to and including January 11, 2015 . . . ."  Following a jury trial, the court entered a judgment for the plaintiffs, including punitive damages awards of $350 million against Kimberly-Clark and $100 million against Halyard.[4]  The district court denied various posttrial motions filed by Kimberly-Clark and Halyard (an appeal is now pending in the Ninth Circuit) but

those listed on Schedule 6.11(a) as 'excluded actions' . . . ." (Emphasis added.)

[3]     *Bahamas Surgery Center, LLC, et al. v. Kimberly-Clark Corporation and Halyard Health, Inc.* (C.D.Cal. No. 2:14-cv-08390-DMG-PLA).

[4]     The judgment also awarded $3,889,327 in compensatory damages and $1,062,391.75 in prejudgment interest against Kimberly-Clark, and $261,445 in compensatory damages and $43,788.99 in prejudgment interest against Halyard.

4

reduced the punitive damages awards to roughly $19 million against Kimberly-Clark and $1 million against Halyard.

After the *Bahamas* jury returned its verdict (and before the district court reduced the punitive damages awards), Halyard "notified Kimberly-Clark that [it was] reserv[ing] [its] rights to challenge any purported obligation to indemnify Kimberly-Clark for the punitive damages awarded against them."[5] Kimberly-Clark responded that any such reservation of rights would constitute an actual or anticipatory breach of Halyard's obligations under the Distribution Agreement.

Halyard then commenced this action seeking a declaratory judgment that it has no obligation to indemnify Kimberly-Clark for punitive damages awarded in the *Bahamas* litigation or any "[e]xpenses or [l]osses . . . associated with an award of punitive damages." Halyard alleges it is not obligated to pay such indemnification because "California law and public policy prohibit indemnification for punitive damages" and because "rules of contract construction under both California and Delaware law require particularly clear, explicit, and unmistakable language before imposing on one party an obligation to indemnify the other for the wrongful acts of the indemnitee."

The day after Halyard filed its California declaratory relief action, Kimberly-Clark filed a mirror-image complaint in Delaware seeking a declaration that Halyard must indemnify it for all damages, including punitive damages; that Halyard had anticipatorily breached the Distribution Agreement; and that

---

[5] Halyard conceded its obligation to indemnify Kimberly-Clark for compensatory damages.

5

Halyard should be estopped from asserting it is not required to indemnify Kimberly-Clark for all damages. Later, on May 8, 2017, Kimberly-Clark sent Halyard a letter demanding Halyard advance Kimberly-Clark's legal fees in the *Bahamas* litigation, in certain legal proceedings filed against Kimberly-Clark in other states, and in the dueling declaratory relief suits in California and Delaware. Kimberly-Clark also demanded, among other things, that Halyard confirm it would take no positions adverse to Kimberly-Clark in the assumed actions, that Halyard file no papers in these cases without Kimberly-Clark's written consent, and that Halyard provide Kimberly-Clark "with all files and work product" in these cases upon request.

Halyard amended its complaint to address the demands made by Kimberly-Clark in the May 8th letter. That is, in addition to seeking a declaration that it is not required to indemnify Kimberly-Clark for punitive damages, Halyard's operative complaint also seeks a declaration that it is not required to comply with any of the other demands presented in the May 8th letter.

B.      *Kimberly-Clark Contests Personal Jurisdiction in California*

Halyard moved to stay or dismiss the declaratory relief action Kimberly-Clark filed in Delaware regarding the Distribution Agreement (the mirror-image of this case). The Delaware Court of Chancery granted the request for a stay of the Delaware declaratory relief action. The Delaware judge expressed "significant doubts that Kimberly-Clark will be able to prevail on a personal jurisdiction defense in the California indemnity action," but concluded "whether or not my doubts are

6

justified, fundamental principles of comity suggest that the California court and not this court should make the determination whether it has personal jurisdiction over Kimberly-Clark in the first instance. [¶] If it turns out that my doubts were incorrect and the California court declines to exercise personal jurisdiction, no significant harm will be done because this case, which I am staying . . . can be reactivated after the California court rules on that issue . . . ."

Soon after the Delaware Court of Chancery imposed its stay, the trial court in this case heard argument on a motion Kimberly-Clark filed to quash service of summons for lack of personal jurisdiction. Halyard conceded California courts do not have general jurisdiction over Kimberly-Clark, but the parties disagreed over whether there is a proper basis for specific jurisdiction.

The trial court (with a substitute judge presiding in place of the originally assigned judge) prepared a tentative order denying Kimberly-Clark's motion to quash. The court's tentative reasoned there was personal jurisdiction over Kimberly-Clark because, in the tentative's words, Halyard's declaratory judgment action "is related to [Kimberly-Clark's] in-state activity (i.e., its sale of surgical gowns). Such in-state activity is the basis for *Bahamas* and the ensuing punitive damages award, for which [Kimberly-Clark] has sought indemnification pursuant to the Distribution Agreement. [Halyard], in turn, now seeks a declaration of the parties' rights and duties under the Distribution Agreement, which specifically lists *Bahamas* in the attached schedule of 'Assumed Actions.'" The trial court, however, did not immediately adopt its tentative order as its final ruling. Instead, it permitted the parties to submit supplemental

7

briefing on whether specific jurisdiction is reasonable and whether narrowing the case to address indemnification only in the *Bahamas* litigation would violate the rule against claim-splitting.

When the parties returned for further argument after supplemental briefing, the trial court (with the originally assigned judge again presiding) viewed the matter differently. The trial court granted Kimberly-Clark's motion to quash because it believed "there is no connection between the forum and the specific claim at issue, and thus, it is irrelevant that [Kimberly-Clark] sold 'millions' of surgical gowns in California and earned 'millions' in sales revenues." The trial court found it unimportant that Halyard "partly seeks a declaration of its obligation to indemnify [Kimberly-Clark] for punitive damages awarded in *Bahamas*." This was so, the trial court reasoned, "because *Bahamas* (a class action by California plaintiffs[ ] for torts arising from the sale of [Kimberly-Clark's] surgical gowns in California) is distinct from the present indemnity action."

## II.  DISCUSSION

The United States Supreme Court recently set the ground rules for our resolution of the key issue presented in this appeal: "In order for a state court to exercise specific jurisdiction, 'the *suit'* must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum'*"; in other words, there must be "a connection between the forum and the specific claims at issue." (*Bristol-Myers Squibb Co. v. Superior Court* (2017) ___ U.S. ___, ___ [137 S.Ct. 1773, 1780-1781] (*Bristol-Myers*).) That is easier said than applied because personal jurisdiction does not turn on "'mechanical' tests" (*Burger King Corp. v. Rudzewicz* (1985) 471

8

U.S. 462, 478 (*Burger King*)) and there is room for reasonable disagreement about what it means for one thing to arise out of or relate to another.

Ultimately, we are convinced Kimberly-Clark has the better view of the limits of due process as most recently described by the high court. Halyard identifies two respects in which, it says, Kimberly-Clark purposefully availed itself of California as a forum: first, by selling surgical gowns in this state, and second, by executing the Distribution Agreement, which Halyard characterizes as a "California-directed contract." These theories of purposeful availment define the universe of relevant contacts with California, which are insufficient to confer jurisdiction here. As to the former, Kimberly-Clark's gown sales are not sufficiently connected to the gist of this declaratory relief action, namely, the meaning and enforceability of the Distribution Agreement. The connection is too attenuated because we cannot presume, when undertaking our jurisdictional analysis, that California substantive law (e.g., the asserted rule against indemnification of punitive damages) will apply when resolving the merits of the dispute. (*Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 778 (*Keeton*).) Second, listing the California action in the Distribution Agreement as one among a number of others to be indemnified does not suffice to make the agreement "California-directed" in any meaningful sense.

*A. General Legal Framework*

California's long-arm statute (Code Civ. Proc., § 410.10) authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. "The Due Process Clause of the

9

Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. [Citation.] Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' *International Shoe Co. v. Washington*[ (1945)] 326 U.S. 310, 316 [(*International Shoe*)] (quoting *Milliken v. Meyer*[ (1940)] 311 U.S. 457, 463[ ])." (*Walden v. Fiore* (2014) 571 U.S. 277, 283.)

Personal jurisdiction may be had on either a general (all-purpose) or specific (case-linked) basis. (*Bristol-Myers*, *supra*, ___ U.S. at p. ___ [137 S.Ct. at pp. 1779-1780].) A nonresident defendant is subject to the general jurisdiction of the forum if the defendant is "'essentially at home in the forum State,'" which, for corporations, is commonly the place of incorporation or where the corporation maintains its principal place of business. (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 137-139.) It is obvious California courts do not have general jurisdiction over Kimberly-Clark under this standard and Halyard does not contend otherwise.

"Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the *suit'* must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum.*' [Citations.] In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' [Citation.] For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that

establishes jurisdiction.' [Citation.]" (*Bristol-Myers*, *supra*, ___ U.S. at p. ___ [137 S.Ct. at p. 1780].)

"When determining whether specific jurisdiction exists, courts consider the "'relationship among the defendant, the forum, and the litigation.'" [Citations.] A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum"' [citations]; and (3) "'the assertion of personal jurisdiction would comport with 'fair play and substantial justice'"' [citations]." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269; see also *Gilmore Bank v. AsiaTrust New Zealand Ltd.* (2014) 223 Cal.App.4th 1558, 1568; *Greenwell v. Auto-Owners Ins. Co.* (2015) 233 Cal.App.4th 783, 792.)

### B. This Litigation Does Not Arise Out of or Relate to Kimberly-Clark's Medical Gown Sales and Marketing in California

Kimberly-Clark does not dispute it sold millions of surgical gowns in California. The issue is whether this conduct, which was sufficient to support personal jurisdiction in a case alleging fraud in the manner by which Kimberly-Clark marketed the gowns in California (*Bahamas*), is sufficient to support personal jurisdiction in a case concerning whether Halyard may be required to indemnify Kimberly-Clark for punitive damages.

Halyard contends there is a "clear relationship" between Kimberly-Clark's California gown sales and Halyard's action to prevent Kimberly-Clark from evading payment of a punitive damages judgment resulting from those sales. Halyard's

11

characterization of this action, however, implicitly if not explicitly presumes that enforceability of the Distribution Agreement's indemnification provision will be governed by California law.[6] Even if this presumption were well-founded—and we do not hold that it is—it has no place in our jurisdictional analysis.

In *Keeton*, *supra*, 465 U.S. 770, the United States Supreme Court considered whether the defendant publisher could be sued for defamation in New Hampshire (despite the fact that "the bulk" of the plaintiff's alleged injuries were sustained outside New Hampshire) when New Hampshire was the only state in which the action was not time-barred and the plaintiff would be able to recover for damages caused in all other states. (*Id.* at p. 773.) Addressing the purported unfairness of permitting New Hampshire personal jurisdiction in these circumstances, the Court explained that "[t]he question of the applicability of New Hampshire's statute of limitations to claims for out-of-state damages presents itself in the course of litigation only after jurisdiction over [the defendant] is established, and we do not think that such choice-of-law concerns should complicate or distort the jurisdictional inquiry." (*Id.* at p. 778.) These choice of

---

[6] Halyard, for instance, writes in its opening brief that "Kimberly-Clark established minimum contacts with California when it expressly crafted the Distribution Agreement to shift liability that it knew would be imposed in California should Kimberly-Clark be found liable for its allegedly tortious California conduct." The same brief also maintains "Kimberly-Clark availed itself of forum benefits again when it demanded that Halyard pay the punitive damages in [the *Bahamas*] judgment, in contravention of California public policy."

12

law concerns, in the high court's view, have "nothing to do with" the jurisdictional analysis. (*Ibid.*)

Halyard's presumption that California substantive law will apply in resolving this declaratory relief action is not identical to the position of the publisher in *Keeton*, but the impermissible complicating effect is similar. In *Keeton*, choice of law concerns were a distraction from the "proper[ ] focus[ ] on 'the relationship among the defendant, the forum, and the litigation'" and were therefore put aside for purposes of analyzing personal jurisdiction. (*Keeton, supra*, 465 U.S. at p. 775.) Here, it is more difficult to disentangle the choice of law issue from the jurisdictional analysis because Halyard suggests California's public policy regarding indemnification of punitive damages is what *establishes* the relationship between the defendant, the forum, and the litigation.

To wit, Halyard asserts the indemnification dispute is related to the forum because denying indemnity impermissibly undercuts a judgment rendered in the forum for Kimberly-Clark's activity in the forum. *Keeton* instructs, however, that this is not the right framing for analyzing personal jurisdiction. Whether enforceability is governed by California law has nothing to do with whether enforceability may be determined by a California court. The required relationship among Kimberly-Clark, California, and this litigation cannot be based on what Halyard's argument assumes, i.e., that California substantive law applies.[7]

---

[7] We do not make choice of law assumptions, but we note Halyard's assumption is not one that leaps off the pages of the Distribution Agreement. The parties agreed there that the agreement "shall be governed by and construed and enforced in accordance with the substantive laws of the State of Delaware

Halyard nonetheless offers two alternative theories as to how this litigation arises out of or relates to Kimberly-Clark's conduct in California that do not depend on a choice of law assumption. Halyard argues (1) the indemnification dispute arises out of Kimberly-Clark's participation in California court proceedings in *Bahamas*, and (2) if Kimberly-Clark had never sold gowns in California, there would be no California judgment to indemnify.

The first of these theories can be dismissed out of hand. Kimberly-Clark did not "purposefully avail[ ] itself" of the benefits of California law by defending a lawsuit here. (*Burger King, supra,* 471 U.S. at p. 475 ["[the] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person'"].)

The second theory rests on the observation that the indemnification dispute is an integral part of a causal chain that includes the *Bahamas* judgment and the gown sales that prompted it—in Halyard's words, that "[b]ut for the punitive damages awarded in *Bahamas*, this action would not exist." The suggestion that this "but for" causal link provides the nexus required for personal jurisdiction, however, represents a "mechanical" approach at odds with our obligation to consider "the quality and nature of [forum contacts] in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (*International Shoe, supra,*

---

and the federal laws of the United States of America applicable therein, as though all acts and omissions related hereto occurred in Delaware."

326 U.S. at p. 319; see also *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 561 ["The California Supreme Court has made clear . . . that neither a 'proximate cause' test nor a 'but for' test is the proper standard for evaluating whether a cause of action is sufficiently related to a defendant's forum contacts to warrant the exercise of jurisdiction"].)

This case is not primarily about Kimberly-Clark's representations to California consumers. (See, e.g., *Asahi Metal Industry Co., Ltd. v. Superior Court of California* (1987) 480 U.S. 102, 114-115 [personal jurisdiction lacking in part because California had only a slight interest in a dispute that was "primarily about indemnification rather than safety standards"].) It is about how two non-California corporate entities intended to (or were legally permitted to) allocate risk associated with various pending and contemplated lawsuits as they parted ways. That a judgment was entered in California in favor of certain third parties (the *Bahamas* plaintiffs), and that this judgment conceivably could have played some role (along with litigation in other jurisdictions in which assumed actions were pending) in prompting Kimberly-Clark to seek a declaration regarding its indemnification obligations, does not establish the requisite connection between this forum and the specific claims at issue in this suit. (*Bristol-Myers*, *supra*, ___ U.S. at p. ___ [137 S.Ct. at p. 1781]; see also *id.* at p. ___ [137 S.Ct. at p. 1783] ["'[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction'"].)

Halyard resists this conclusion, citing several out-of-state insurance cases in support of its view that indemnification disputes necessarily arise out of forum contacts on which the

insured's liability to third parties is premised. But these cases are unreliable guides because they do not identify a relationship between forum contacts and the specific claims at issue, which is what the high court's most recent personal jurisdiction cases require.

In *St. Paul Surplus Lines Insurance Co. v. International Playtex, Inc.* (Kan. 1989) 777 P.2d 1259 (*St. Paul Surplus*), for instance, an insurer sought a declaratory judgment that it was not obligated to indemnify its insured for punitive damages awarded in a product liability action. (*Id.* at p. 1261.) The product liability case was adjudicated in Kansas, but the insured, Playtex, contended Kansas lacked personal jurisdiction in the declaratory judgment action. (*Id.* at p. 1262.) The Kansas Supreme Court acknowledged "no activity took place in Kansas with regard to the formation of the insurance contracts" but emphasized "the parties anticipated that claims under the policies might arise in Kansas" because "a number of provisions [were] designed to comply with various insurance laws and regulations" of Kansas and other states. (*Id.* at p. 1265.) The Kansas court further emphasized "Playtex purposefully advertised and sold its tampons in Kansas." (*Id.* at p. 1266.)

The reasoning in *St. Paul Surplus* does not address the relationship between the indemnification dispute and Playtex's distribution of tampons in Kansas. Rather, it suggests that *notwithstanding* the attenuated relationship, Playtex's *other* Kansas-directed activities justified personal jurisdiction.

Similarly, in *Capitol Specialty Insurance Corp. v. Splash Dogs, Inc.* (S.D.Ohio 2011) 801 F.Supp.2d 657 (*Capitol Specialty*), a federal district court in Ohio determined a declaratory judgment action brought by an insurer against its insured arose

16

from the insured's forum activities that supported specific jurisdiction in an underlying lawsuit. (*Id.* at pp. 666-667, 670.) Applying a proximate cause test, the court reasoned "if an insured either transacts business in a state other than the one in which he or she resides, or tortiously injures someone in such a state, it is reasonably foreseeable that insurance coverage issues may arise from that conduct." (*Id.* at p. 666.) Insofar as the specific claims at issue in such insurance coverage disputes may have little or nothing to do with the forum conduct that prompted them, however, this mode of reasoning is not consistent with the rule articulated in *Bristol-Myers*.

In *Employers Mutual Casualty Co. v. Bartile Roofs, Inc.* (10th Cir. 2010) 618 F.3d 1153 (*Employers Mutual*), an insurer sought a declaratory judgment that it was not obligated to defend and indemnify its insured, a Utah corporation, in connection with the insured's work on a resort in Wyoming. (*Id.* at pp. 1156-1157.) The Tenth Circuit held the insured was subject to personal jurisdiction in Wyoming under either a "but for" or "proximate cause" approach. As to the latter, the *Employers Mutual* court reasoned "[the insured's] allegedly negligent work [was] relevant to the merits of the declaratory judgment action." (*Id.* at p. 1161.) This is no more accurate, however, than suggesting the permeability of MicroCool gowns is somehow relevant to the merits of this indemnity dispute. The allegedly negligent work prompted the declaratory judgment action, but it did not give rise to the indemnification rights at issue in the declaratory judgment action.

Finally, Halyard tries to pull too much out of the partially-overruled *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434 (*Vons*), a case in which Jack-in-the-Box's California-

17

based parent company sued Vons in California for supplying its restaurants with contaminated beef.  (*Vons*, *supra*, 14 Cal.4th at p. 440.)  Vons filed a cross-complaint against non-California Jack-in-the-Box franchisees, among others, alleging they did not properly cook the beef and seeking damages and indemnification.  (*Id.* at pp. 440-444.)  The non-California franchisees contested personal jurisdiction in California, and our Supreme Court ruled the franchisees "purposefully availed themselves of benefits in the forum by reaching out to forum residents to create an ongoing franchise relationship" (*id.* at p. 449) and this relationship "in the forum drew these defendants and Vons into a relationship as alleged joint tortfeasors, with some joint liability and rights of indemnification" (*id.* at p. 456).  The *Vons* court further held "the franchise relationship, with its uniform standards for cooking food, training employees, and buying equipment, itself was a source of injury to Vons," such that Vons's cross-claims "arose out of the contractual relationship between [the franchisees and franchisor], a relationship that had a substantial connection to California."  (*Id.* at p. 457.)

Halyard contends that "if an indemnification relationship forms a substantial relationship between the parties' conduct [outside of California] and their contract [with California residents], the relationship necessarily runs in both directions."  But that is not the right view of the role of the indemnification relationship discussed in *Vons*.  The indemnification relationship did not "form" a substantial connection between the franchisees' preparation of contaminated beef and their franchise agreements.  Rather, the indemnification relationship was itself a product of the franchisees' franchise agreements such that Vons's claims based on the indemnification relationship *arose out of the contract*

18

*activity that created it.* Here, by contrast, Kimberly-Clark's sales of surgical gowns in California did not create the indemnification relationship between it and Halyard. A separate act—the two non-California companies' execution of the Distribution Agreement in Texas—created that relationship.

The bottom line is that Kimberly-Clark's gown sales in California are insufficiently connected to the specific claim in this lawsuit, namely whether the Distribution Agreement's indemnity obligation is enforceable. Personal jurisdiction therefore may not be had insofar as Halyard relies on the gown sales as the relevant purposeful availment.

C.    *The Distribution Agreement Is Not a "California-Directed" Contract Conferring Personal Jurisdiction*

A defendant need not ever "*physically* enter the forum [s]tate" to be subject to personal jurisdiction. (*Burger King, supra*, 471 U.S. at p. 476.) "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court] ha[s] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. [Citations.]" (*Ibid.*)

In *Burger King*, the Supreme Court ruled the business endeavors of a Michigan resident who purchased a Burger King franchise were purposefully directed toward Florida, even though the franchise owner had never been to Florida, because "he entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with" Burger King Corporation, the franchisor headquartered in Florida. (*Id.* at pp. 479-482.) The Court also emphasized that the franchise agreement at issue in that case included a Florida choice of law

19

provision.  (*Id*. at pp. 481-482.)  Distinguishing *Keeton* and other cases holding that a choice of law analysis or determination is not relevant to personal jurisdiction, the Court explained that contracting parties' *choice* (right or wrong) of the substantive law that would apply *was* relevant and "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."  (*Id*. at p. 482.)

Halyard contends Kimberly-Clark's execution of what Halyard says is a "California-directed" Distribution Agreement supports personal jurisdiction in this state.  There is no similarity, however, between Kimberly-Clark and the out-of-state franchise owner in *Burger King*.  Unlike the Burger King Corporation that was incorporated in the forum state (Florida), neither Kimberly-Clark nor Halyard are California corporations.  The Distribution Agreement was negotiated and executed entirely in Texas, not California in any part.  Kimberly-Clark did request that *Bahamas* be included among the 27 expressly assumed actions in the Distribution Agreement, but nothing suggests Kimberly-Clark was then aware (two days after the complaint was filed) that the *Bahamas* case was more likely than any other to prompt Halyard to dispute its indemnification obligations.  And the parties' choice of law selection here (again quite the opposite of *Burger King*) reflects a deliberate affiliation with Delaware—Kimberly-Clark and Halyard's state of incorporation—not California.

Halyard nevertheless cites several unpublished district court cases for the proposition that "courts have repeatedly held that a defendant purposefully avails itself of the forum by contracting for coverage in that forum."  (*National Casualty Co. v. National Association of Intercollegiate Athletics* (C.D.Ill., Mar. 6,

20

2017, No. 16-CV-2145) 2017 WL 6945571, *Massachusetts Bay Insurance Co. v. Portland Water Dist.* (D.N.H., May 10, 2000, No. CIV. 99-487-M) 2000 WL 1499493, and *United Services Auto Assn. v. Cregor* (N.D.Ill. 1985) 617 F.Supp. 1053.  But see, e.g., *Hiscox Insurance Co., Inc. v. Bordenave* (S.D.N.Y. June 26, 2019, No. 18 Civ. 10222) 2019 WL 2616338, *8 [New York long-arm statute did not provide personal jurisdiction over non-New York defendants in declaratory judgment action based on insurance contract even though insurance claim arose from litigation in New York]; *National Indemnity Co. v. Pierce Waste Oil Services, Inc.* (E.D.Mo. 1990) 740 F.Supp. 721, 724 [Missouri long-arm statute did not provide personal jurisdiction over non-Missouri defendant in declaratory judgment action based on insurance contract even though insurance claim arose from litigation in Missouri]).  The non-binding cases Halyard cites, which concern insurance relationships different from the indemnity agreement at issue here, do not persuade us the Distribution Agreement is California-directed in any meaningful sense.

Rather, considering the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" (*Burger King*, *supra*, 471 U.S. at p. 479), the pertinent aspect of the Distribution Agreement is best described as indemnity-directed, not California-directed.  That is, Kimberly-Clark wanted assurance that liability arising from the acts of its former healthcare division would be compensated *wherever* it might arise (other than as specified in the list of excluded actions) and there was no particular focus on California over any other litigation forum.  The parties' agreement to define the universe of required indemnity so broadly does not create jurisdiction to

21

determine the meaning and enforceability of the Distribution Agreement everywhere around the world that liability might be had and indemnity required.  To the contrary, the constitutionally required minimum contacts between the forum and the litigation must be present, and—as to this specific dispute—such contacts with California are lacking.


## DISPOSITION

The trial court's order is affirmed.  Kimberly-Clark shall recover its costs on appeal.




BAKER, J.


I concur:



KIM, J.



22

# *Halyard Health, Inc. v. Kimberly-Clark Corp. – B294567*

RUBIN, P.J. – Dissenting:

Does a cause of action for declaratory relief regarding contractual indemnification *solely* arise from or relate to the contract itself, or does it also arise from or relate to the underlying injury-producing conduct for which indemnification is sought? The answer, I believe, is "Yes." The majority disagrees. Hence, my dissent.

## *FACTUAL SUMMARY*

The relevant facts and procedure are not seriously in dispute, and are fully described by the majority. Briefly, Kimberly-Clark manufactured and sold a great many products, among them medical gowns. It advertised its High Performance Gowns as satisfying an industry standard known as "AAMI Level 4," providing protection from the transfer of bodily fluids, bacteria and infection between patient and health care professional. Class plaintiffs in the underlying action alleged that this representation was untrue; the medical gowns failed the AAMI Level 4 test, many times catastrophically. Kimberly-Clark knew this, and nonetheless continued to market the gowns, for years, as meeting AAMI Level 4 standards.

The underlying action, known as the *Bahamas* case, was a California federal class action brought by purchasers of the gowns, alleging fraud.

Around the time the *Bahamas* case was filed, Kimberly-Clark had spun off its health care business to Halyard, resulting in Kimberly-Clark and Halyard both being named defendants in the *Bahamas* case, although Kimberly-Clark's liability was based

on years of selling the gowns and Halyard's was based on only weeks of sales.

As between Kimberly-Clark and Halyard, the contract spinning off the health care business (known as the "Distribution Agreement") provided that Halyard would defend and indemnify Kimberly-Clark in connection with a list of pending litigation, including expressly the *Bahamas* case.

The *Bahamas* case ended with a verdict in favor of the plaintiff class on its cause of action for fraudulent concealment. Concluding Kimberly-Clark and Halyard had acted with malice, oppression or fraud, punitive damages were awarded. Although the punitive damage awards were later reduced, the jury initially awarded $350 million against Kimberly-Clark and $100 million against Halyard. The jury also awarded compensatory damages.

Faced with Kimberly-Clark's request that Halyard indemnify it for $350 million in punitive damages, and Halyard's belief that indemnification for punitive damages is against California public policy, Halyard brought the current action against Kimberly-Clark for declaratory relief. Believing that punitive damages can be indemnified in Delaware, Kimberly-Clark brought a competing declaratory relief action in Delaware.

The ultimate resolution of ~~the~~ liability for the punitive damage award against Kimberly-Clark will likely turn on issues of choice of law. Halyard prefers the law of California, as the state in which the punitive damages were awarded, while Kimberly-Clark prefers Delaware, as the state identified in the choice of law provision in the Distribution Agreement. That issue is not before us, although it apparently motivates the parties' litigation strategies. The sole issue on this appeal is whether

2

California has personal jurisdiction over Kimberly-Clark in Halyard's declaratory relief action.[8]

It is undisputed that Kimberly-Clark and Halyard are not California entities; it is also undisputed that there is no basis for California to exert general jurisdiction over Kimberly-Clark. The issue on appeal is whether California has specific jurisdiction over Kimberly-Clark in this declaratory relief action, due to Kimberly-Clark's sale of the defective medical gowns in California.

---

[8] The declaratory relief complaint, as originally filed, sought *only* declaratory relief that Halyard need not indemnify Kimberly-Clark for the punitive damage award in the *Bahamas* case. After it was filed, Kimberly-Clark made "additional demands against Halyard with respect to the California punitive damages award and various other pending lawsuits." Halyard believed these demands were inconsistent with the Distribution Agreement and the parties' obligations to each other, so amended its declaratory relief complaint to seek declaratory relief with respect to these demands as well. Because some of Kimberly-Clark's demands challenged by Halyard related to litigation outside of California, Kimberly-Clark argues that the amended complaint complicates the personal jurisdiction analysis, as the declaratory relief action was now multi-jurisdictional. As I will discuss, I believe that California courts do have personal jurisdiction over Kimberly-Clark with respect to Halyard's complaint for declaratory relief regarding indemnity for the *Bahamas* punitive damages. Whether California courts also have specific jurisdiction over Kimberly-Clark with respect to Halyard's remaining claims for declaratory relief is beyond the scope of this appeal; Kimberly-Clark did not move to quash service on a case-by-case basis.

3

## DISCUSSION

### 1.     *General Rules of Personal Jurisdiction*

California's long-arm statute provides California courts may exercise jurisdiction as far as the limits of the due process clause.  (Code Civ. Proc., § 410.10; *Asahi Metal Industry Co. v. Superior Court of California* (1987) 480 U.S. 102, 106.)

In general, "for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'  [Citations.]  In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'  [Citation.]  For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'  [Citation.]"  (*Bristol-Myers Squibb Co. v. Superior Court* (2017) ___ U.S. ___ [137 S.Ct. 1773, 1780] (*Bristol-Myers*).)

The exercise of jurisdiction comports with the requirements of due process " ' "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " [Citation.]'  [Citation.]  '[T]he minimum contacts test asks "whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." [Citation.]  The test "is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." [Citation.]'  [Citation.]"  (*Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 552-553 (*Jayone*).)

4

Foreseeability is relevant to the analysis; the defendant's conduct and connection with the forum State must be such that the defendant "should reasonably anticipate being haled into court there." (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.)

**2.     *The Three-Prong Test***

The majority has set out the well-settled, three-prong, test for specific jurisdiction.  " 'When determining whether specific jurisdiction exists, courts consider the " 'relationship among the defendant, the forum, and the litigation.' " [Citation.]  A court may exercise specific jurisdiction over a nonresident defendant only if:  (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum' " [citation]; and (3) " 'the assertion of personal jurisdiction would comport with "fair play and substantial justice" ' " [citation].' [Citation.]" (*Jayone, supra,* 31 Cal.App.5th at p. 553.) When there is no conflict in the evidence, as is the case here, the question is one of the law and the reviewing court engages in an independent review of the record.  (*Ibid.*)

I now turn to an analysis of each of the three prongs.

A.     *Prefatory Statement – Observations of the Delaware Court*

In response to Halyard filing this declaratory relief action, Kimberly-Clark responded with a counter declaratory relief lawsuit in Delaware.  Halyard successfully stayed the Delaware action on the basis that the California action had been first filed.

In opposing Halyard's motion to stay, Kimberly-Clark argued that the California courts were not capable of doing prompt and complete justice in this matter because California

5

lacked personal jurisdiction over Kimberly-Clark. The Delaware court rejected the argument, stating in words that resonate, "As an initial matter, although I am not deciding that issue . . . , the argument seems to strain credibility to my eyes as a Delaware judge. [¶] The California federal court clearly was willing to exercise personal jurisdiction over Kimberly-Clark in the *Bahamas* action. The jury award in that action was based on Kimberly-Clark's sales of nearly 3 million surgical gowns . . . resulting in nearly $18 million of revenue. The underlying disputes here arise over the indemnification obligations triggered by the *Bahamas* action. Then it dips into the other actions, which are related as well. When Kimberly-Clark and Halyard entered into the distribution agreement, it was certainly foreseeable that Halyard would have to indemnify Kimberly-Clark for events occurring in California, as Kimberly-Clark purposely availed itself of that state's jurisdiction. [¶] For these reasons, . . . I have significant doubts that Kimberly-Clark will be able to prevail on a personal jurisdiction defense in the California indemnity action."

While the Delaware court stated it was not deciding the issue, the court's analysis addressed all three elements of the three-prong test, and reached what I believe to be the clear, logical result, as I shall next discuss.

B.     *Prong One – Purposeful Availment*

It is not disputed that prong one is established. Prong one requires that the defendant purposefully avail itself of forum benefits. Here, Kimberly-Clark purposefully availed itself of forum benefits by selling millions of dollars of apparently defective medical gowns in California.

6

C.    *Prong Two – Arising Out of or Relating To*

My parting of ways with the majority is founded on my view that the current litigation – seeking declaratory relief regarding indemnification for the punitive damages in the *Bahamas* case – arises out of, or is related to, the sale of the defective medical gowns.  Halyard takes the position that the relation is clear; Kimberly-Clark argues that the sale of medical gowns is irrelevant to *this* action, which arises only from the Distribution Agreement between Kimberly-Clark and Halyard.  I believe Halyard has the better argument.  This is supported by both the interpretation of broad language of the test and the limited case authority the parties have supplied.

1.    "Arising Out of or Relating To"

The second prong does not require that the current litigation *arise out of* the defendant's contacts with the forum state; instead, the test is in the disjunctive, and jurisdiction may be found also if the litigation is sufficiently *related to* the contacts.  (*Jayone, supra,* 31 Cal.App.5th at pp. 559-560.)  The most recent United States Supreme Court case on specific jurisdiction is *Bristol-Myers* which restated the "arise out of or relate to" test from two of its earlier jurisdiction opinions, *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472–473; and *Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414.  "In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.' " (*Bristol-Myers, supra,* 137 S.Ct at p. 1780.)

Nothing in *Bristol-Myers* suggests the high court has narrowed or otherwise changed the "arise out of or relate to" standard.  Rather, *Bristol-Myers's* express holding is that the California Supreme Court's application of a "sliding scale" approach to specific jurisdiction

7

(*Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783) was inconsistent with prior United States Supreme Court precedent. The high court found that the sliding scale standard resembled "a loose and spurious form of general jurisdiction." (*Bristol-Myers*, *supra*, 137 S.Ct at p. 1776). We have nothing of the sort here.

Applying the *Bristol-Myers* arise out of/relate to test, I focus on "relate to," which in my view, is significantly broader than "arising out of." In one sense, it is difficult to imagine a more "related to" action than an indemnification claim between the two defendants in the very action that gave rise to the indemnification claim.

In determining the meaning of "related to," courts have generally chosen one of three different standards: proximate cause, but-for causation, or substantial connection. (*Emplrs. Mut. Cas. Co. v. Bartile Roofs, Inc.* (10th Cir. 2010) 618 F.3d 1153, 1160-1161.) California uses the substantial connection test. " 'A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate.' [Citation.]" (*Jayone, supra,* 31 Cal.App.5th at p. 560.) " ' " 'Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact.]' " [Citation.]' [Citations.]" (*Ibid.*)

This broad construction of "relating to" is in line with the interpretation given the phrase in other contexts. A series of cases cited by our colleagues from the Fourth District makes the

8

point: "The Legislature's use of the phrase 'relating to' compels our conclusion. (See *Altria Group, Inc. v. Good* (2008) 555 U.S. 70, 85, 129 S.Ct. 538, 172 L.Ed.2d 398 [meaning of the key phrase 'relating to' is broad]; *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 383–384, 112 S.Ct. 2031, 119 L.Ed.2d 157 [the 'ordinary meaning of ["relating to"] is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," Black's Law Dictionary 1158 (5th ed. 1979)']; *Bono v. David* (2007) 147 Cal.App.4th 1055, 1067, 54 Cal.Rptr.3d 837 [interpreting arbitration clause language ' "any claim arising from or related to this agreement" ' as broad].)" (*San Diego Unified School Dist. v. Yee* (2018) 30 Cal.App.5th 723, 733.)

Under this test, I have no difficulty concluding that the complaint – seeking a resolution of the dispute over which party is responsible for the punitive damages awarded against Kimberly-Clark in the *Bahamas* action – is related to the California conduct for which punitive damages were awarded against Kimberly-Clark in the first place. This case is not simply a forward-looking hypothetical dispute regarding whether the Distribution Agreement provides for indemnification of punitive damages; it is a tangible controversy regarding whether there is indemnification, born out of a California federal court's award of punitive damages for fraudulent conduct which took place in California.

To look at this case from the obverse, the second prong is *not* established only when the operative facts of the controversy *are not related* to the defendant's forum conduct. Here, the operative facts of the controversy are (1) Kimberly-Clark got hit with a $350 million punitive damage award (later reduced) in the

9

*Bahamas* action; and (2) there was a contract by which Halyard agreed to indemnify Kimberly-Clark for damages in the *Bahamas* action. Even if Kimberly-Clark is correct that the second fact – the contract – is, on its own, unrelated to the company's California conduct, the first fact – the punitive damage award in the *Bahamas* action – is. The relation is not merely tangential or but-for; the massive punitive damage award is inextricably intertwined with the advertising and sale of defective medical gowns in California which prompted it, and which the indemnification agreement contemplated.

      2.    Case Law is in Accord

Neither party has cited to any California authority that applied the related to test to an indemnification claim. *Bristol-Myers* itself was not an indemnification case. Although significant case law in other jurisdictions holds that an indemnification action is related to the underlying judgment to be indemnified, the majority finds these cases "unreliable guides." I disagree.

In *St. Paul Surplus Lines Inc. v. International Playtex, Inc.* (Kan. 1989) 777 P.2d 1259 (*St. Paul*), the defendant tampon manufacturer, Playtex, was sued in products liability in federal court in Kansas, resulting in a $10 million punitive damage award. When it sought to recover the punitive damages from its excess insurers, the insurers brought a declaratory relief action in Kansas state court seeking (and obtaining) a ruling that Kansas public policy prohibited indemnification for punitive damages. Playtex appealed, arguing that the Kansas court had no personal jurisdiction over it in the declaratory relief action, despite the fact that its sale of tampons in Kansas justified personal jurisdiction in the underlying products liability action.

10

(*Id.* at pp. 1263-1264.) In an argument identical to that made by Kimberly-Clark in this case, Playtex argued that "the current claim does not arise out of the use of its products sold in this state, but rather out of an insurance contract between nonresident corporations which have no connection to the State of Kansas." (*Id.* at p. 1264.) The Kansas Supreme Court rejected the argument, explaining, "It was not error for the trial court to find that the declaratory judgment action was sufficiently connected to the sale of Playtex products in Kansas to warrant personal jurisdiction over Playtex. The declaratory judgment action requires us to determine whether coverage for punitive damages exists to protect Playtex in the underlying . . . damage action. The question of coverage arises from the actions taken by Playtex in selling its product in Kansas, which subsequently caused the death of a Kansas resident. The plaintiff insurers' claim for an insurance coverage determination lies in the wake of the commercial activities of Playtex in Kansas." (*Ibid.*)

The majority dismisses the *St. Paul* case by stating that it "does not address the relationship between the indemnification dispute and Playtex's distribution of tampons in Kansas," and instead suggesting *St. Paul* found jurisdiction based on Playtex's "*other* Kansas-directed activities." (Maj. Opn., p. 16.) As I have quoted, the *St. Paul* court *did* address the relationship, and found it sufficient. To the extent the *St. Paul* court mentioned any of Playtex's other Kansas-directed activities, the court simply noted that there was language in the insurance policies specifically directed toward complying with Kansas law, which suggested that "the parties anticipated that claims under the policies might arise in the State of Kansas." (*St. Paul*, *supra*, 777 P.2d at p. 1265.) Foreseeability of being haled into a forum's court is

11

relevant to the personal jurisdiction inquiry. (*World-Wide Volkswagen Corp. v. Woodson*, *supra*, 444 U.S. at p. 297.)

*St. Paul* is in no way an outlier. In *Employers Mutual Casualty Co. v. Bartile Roofs, Inc., supra,* 618 F.3d 1153, the Tenth Circuit reached the same result, using the stricter probable cause test. In that case, a construction project in Wyoming went wrong, and lead to litigation. A Utah roofing subcontractor, who had worked on the project in Wyoming, was brought into the litigation, and tendered the dispute to its (Iowa) insurer. The insurer defended under a reservation of rights, and brought a declaratory relief action in federal court in Wyoming, arguing that it had no obligation to defend or indemnify its insured roofing subcontractor. The subcontractor challenged personal jurisdiction in Wyoming, on the basis that the dispute arose from the (non-Wyoming) insurance contract, rather than the Wyoming construction project. (*Id.* at pp. 1156-1158.) In determining the proper test to use for the second prong of specific jurisdiction, the Tenth Circuit declined to use substantial connection, and instead concluded that under either proximate cause or but-for causation, the element was satisfied. (*Id.* at p. 1161.) As to proximate cause, the court explained that the defendants' allegedly negligent work on the Wyoming roof "is relevant to the merits of the declaratory judgment action. In the declaratory judgment action, [the insurer] seeks to avoid having to defend or indemnify [the roofer] for injuries arising out of the allegedly negligent work on the luxury hotel in Wyoming." (*Ibid.*)

Lastly, in *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC* (S.D. Ohio 2011) 801 F.Supp.2d 657, the defendant in a federal action in Ohio sought insurance coverage, and the insurer brought a declaratory relief action, also in federal court in Ohio,

seeking a declaration that it had no indemnification obligation. The defendant challenged personal jurisdiction, arguing that the declaratory relief action did not arise from any of the business it had transacted in Ohio which led to the underlying action. The court disagreed, even under the strict proximate cause standard, explaining, "[T]here is a proximate, and not just a 'but-for,' causal connection between the actions that give rise to an underlying lawsuit and insurance coverage questions pertaining to that case. The Court noted, in addition, that if an insured either transacts business in a state other than the one in which he or she resides, or tortiously injures someone in such a state, it is reasonably foreseeable that insurance coverage issues may arise from that conduct." (*Id.* at p. 666; see also *United Servs. Auto. Ass'n v. Cregor* (N.D. Ill. 1985) 617 F.Supp. 1053, 1055 [declaratory relief coverage action arises from the policy which insured the allegedly covered acts, and therefore arises out of the covered acts themselves].)[9]

---

[9] The majority cites to two cases which reach different results under state laws that have a narrower reach than the California long-arm statute. *National Indem. Co. v. Pierce Waste Oil Service, Inc.* (E.D. Mo. 1990) 740 F.Supp. 721, 722-723 found no personal jurisdiction over a declaratory relief coverage action under the Missouri long-arm statute, which extends jurisdiction only to actions that "arise[] from" forum contacts, and does not contain "relating to" language. Significantly, the court also found the coverage action in that case was forward-looking, as there had not yet been a finding of liability in the underlying action. The court noted, "Absent a finding of liability against the . . . defendants, plaintiffs cannot be called upon to indemnify defendants under the insurance policy. Thus, the only issues with respect to liability that this lawsuit seeks to resolve or can resolve are question of *potential* liability. Questions of potential

13

A series of unpublished federal cases are also in accord, finding personal jurisdiction over declaratory relief coverage actions based on the defendant insured's underlying conduct in the forum, without focusing solely on the state of the insurance contract. (*National Casualty Company v. National Association of Intercollegiate Athletics* (C.D. Ill. 2017) 2017 WL 6945571, *3, ["If the parties anticipated that Defendant could be sued in Illinois, the parties would have anticipated that Plaintiff's duty to defend could be triggered by an Illinois lawsuit. If the parties anticipated that Plaintiff's duty to defend could be triggered in Illinois, then they must have anticipated that they could be haled into an Illinois court in order to determine their rights and obligations under the insurance policy."]; *Evanston Insurance Co. v. Honso USA, Inc.* (N.D. Cal. 2011) 2011 WL 1362071, *5 [personal jurisdiction exists in California over the coverage action because of the insured's participation in the California underlying action and his California conduct challenged in it]; *Massachusetts Bay Ins. Co. v. Portland Water Dist.* (D.N.H. 2000) 2000 WL 1499493, *4 [personal jurisdiction exists in New Hampshire over the declaratory relief coverage action because of the defendant's tortious conduct in New Hampshire and having obtained an insurance policy intended to cover it]; but see *Northland Insurance Co. v. Berkebile Oil Co.* (W.D. Va. 2003) 2003 WL 22995127, **4-5 [no personal jurisdiction over the

---

liability can only be answered by reference to the parties' contract." (*Id.* at p. 724, fn. 4.) *Hiscox Ins. Co. v. Bordenave* (S.D.N.Y. 2019) 2019 WL 2616338, **7-8 similarly found that an indemnity action did not "arise from" the insured's underlying New York conduct, when the New York long-arm statute did not include a "relating to" standard.

14

coverage action, because the coverage action arises only from the insurance contract, not the underlying tortious activity].)

Given the broad "substantial connection" test used for the second prong in California, it is clear to me that a declaratory relief coverage action both arises out of, and relates to, more than the contract itself, but also to the underlying tortious activity. Each is essential. As a jury found that Kimberly-Clark committed tortious activity in California, for which it seeks indemnification from Halyard, I would conclude the second prong is established.

D. *Prong Three – Fair Play and Substantial Justice*

The final prong asks that the court consider whether the exercise of personal jurisdiction is reasonable, that is, that it comports with fair play and substantial justice. "[T]he determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' [Citation.]" (*Asahi Metal Industry Co. v. Superior Court of California, supra,* 480 U.S. at p. 113.) Where a defendant who purposefully has directed activities at forum residents seeks to defeat jurisdiction, it must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. (*Jayone, surpa,* 31 Cal.App.5th at p. 564.)

Kimberly-Clark has not met this burden. While Kimberly-Clark argues that the costs of litigating the coverage dispute in

15

California is great, it is difficult to perceive how this is so when the issue presented by this declaratory relief action is not particularly fact-dependent, but is largely an issue of law as to whether indemnification for punitive damages is legally permissible. It certainly is less burdensome than the underlying action in which Kimberly-Clark unsuccessfully defended itself from costly class action products liability claims. The interest of the forum state, California, is strong, in that California has a public policy interest in determining whether punitive damage awards imposed for reprehensible tortious conduct in California can be passed off onto other entities. (See *St. Paul, supra,* 777 P.2d at p. 1266 ["Where an award of punitive damages is made in Kansas, pursuant to the laws of Kansas, Kansas public policy should control the determination of who will pay those damages."].)

Nor is there any aspect of the interstate judicial system's interest in obtaining the most efficient resolution of controversies that weighs against personal jurisdiction in this case. There is no reason that a California court should not determine the effect of a California punitive damage award. Whether the California court decides the indemnification action should be adjudicated under California, Delaware or Texas law, or some other, is of no moment to whether there is personal jurisdiction over Kimberly-Clark.

I would reverse the trial court's order granting Kimberly-Clark's motion to quash.


RUBIN, P. J.

16

Filed 1/2/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HALYARD HEALTH, INC.,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>KIMBERLY-CLARK<br>CORPORATION,<br><br>     Defendant and Respondent. | B294567<br><br>(Los Angeles County<br>Super. Ct. No. BC659662)<br><br>ORDER MODIFYING<br>OPINION AND CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

It is ordered that the opinion filed on December 6, 2019, be modified as follows:

In the case caption, Kimberly-Clark Corp. is changed to read Kimberly-Clark Corporation.

So modified, and good cause appearing, it is ordered that the opinion be published in the official reports.

There is no change in judgment.

_____

BAKER, J.                    RUBIN, P. J.                    KIM, J.